## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
## ROCHESTER DIVISION

---

MILAN ATANACKOVIC, M.D.;
BOJANA SAVIC; J. A.;
THE UNITY HOSPITAL OF ROCHESTER;
and ROCHESTER GENERAL HOSPITAL,

      Plaintiffs,                          Civ. Action No.

v.

ELAINE C. DUKE, Acting Secretary,
U.S. Department of Homeland Security;
KEVIN K. MCALEENAN, Acting
Commissioner, U.S. Customs and Border
Protection; ROSE (HILMEY) BROPHY,
Director, Field Operations,
U.S. Customs and Border Protection,
Buffalo Field Office; and
JEFFERSON B. SESSIONS,
Attorney General of the United States,

      Defendants.

---

### COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

Plaintiffs by their undersigned lawyer allege as follows:

### I.  PARTIES

1.      Plaintiff Milan Atanackovic, M.D., ("Dr. Atanackovic") is a citizen of Canada and

Serbia.  He is currently residing in Monroe County at 11 Boneset Trail, Apt. I, North Chili, NY

14514.

2.      Plaintiff Bojana Savic ("Ms. Savic") is a citizen of Canada and Serbia and a

lawful permanent resident of the United States.  She is currently residing in Monroe County at 11

Boneset Trail, Apt. I, North Chili, NY 14514. She is married to Dr. Atanackovic and resides with him.

3.      J.A. is a citizen of the United States by birth. He is the minor child of Dr. Atanackovic and Ms. Savic. He is currently residing in Monroe County at 11 Boneset Trail, Apt. I, North Chili, NY 14514. J.A. resides with his parents.

4.      Plaintiff The Unity Hospital of Rochester ("Unity Hospital") is a not-for-profit hospital corporation. Unity Hospital's principal place of business is 1555 Long Pond Rd., Rochester, NY 14626, Monroe County. Unity Hospital was the petitioner on Dr. Atanackovic's first H-1B petition. Unity Hospital employed Dr. Atanackovic as a family medicine physician.

5.      Plaintiff Rochester General Hospital ("Rochester General") is a not-for-profit hospital corporation. Rochester General's principal place of business is 1425 Portland Ave., Rochester, NY 14621, Monroe County.

6.      Rochester General and Unity Hospital employ many Canadian physicians who are similarly situated to Dr. Atanackovic.

7.      Defendant Elaine C. Duke is the Acting Secretary of Homeland Security, the head of the United States Department of Homeland Security, an agency of the United States. She is named in her official capacity. Her address is: U.S. Department of Homeland Security, Washington, D.C. 20528.

8.      Defendant Kevin K. McAleenan is the Acting Commissioner of U.S. Customs and Border Protection ("CBP"), which is part of the Department of Homeland Security and is an agency of the United States. He is named in his official capacity. His address is: 1300 Pennsylvania Ave., N.W., Washington, D.C. 20229.

9.     Defendant Rose (Hilmey) Brophy is the Director, Field Operations, U.S. Customs and Border Protection, Buffalo Field Office, an agency of the United States.  She is named in her official capacity.  Her address is:  300 Airborne Pkwy., W. #300, Cheektowaga, NY  14225.

10.     Defendant Jefferson B. Sessions is the Attorney General of the United States.  He is named in his official capacity.  His address is:  U.S. Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C.  20530.

## II.  JURISDICTION AND VENUE

11.     This is an action to review administrative agency action of CBP.  The action arises under the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1101 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.  Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1361 (mandamus).  This Court may grant relief pursuant to the Act, the APA, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, 28 U.S.C. §§ 1361, and 28 U.S.C. § 1651 (the All Writs Act).

12.     Defendants Elaine C. Duke, Kevin K. McAleenan, and Rose (Hilmey) Brophy had duties to act in conformity with the statute, the regulations, and the legislative history in admitting Dr. Atanackovic on his approved H-1B petition as a visa-exempt Canadian.

13.     Venue is proper in the United States District Court for the Western District of New York under 28 U.S.C. §§ 1391(e), because all Plaintiffs reside in the district and the United States is a Defendant.

## III.  INTRODUCTION AND LEGAL BACKGROUND

14.     This section of the complaint gives a brief introduction of what happened and what is at stake, then a summary of the legal procedures involved.

15.     CBP denied the admission of Dr. Atanackovic to the United States on January 11, 2017.  The basis of the denial of Dr. Atanackovic's application for admission was that he was subject to the two-year foreign residence requirement of 8 U.S.C. § 1182(e) and he had not fulfilled said requirement.

16.     Many foreigners come to the United States as "J-1" exchange visitors ("J-1s").  This is a kind of nonimmigrant (temporary) classification, as set forth in 8 U.S.C. § 1101(a)(15)(J).

17.     Under 8 U.S.C. § 1182(e), there are three ways that a J-1 can become subject to the two-year foreign residence requirement:  (1) the J-1 program is funded by the U.S. Government or the J-1's Government; (2) the J-1 is engaged in training that is on the "Skills List" for the home country; or (3) the J-1 is coming to the United States for graduate medical education.  The foreign residence requirement is not a ground of inadmissibility.[1]  The foreign residence requirement prohibits a J-1 from doing certain things, such as applying for permanent resident status (green card), H or L visa stamps, or for an immigrant visa until he has either fulfilled the requirement by spending an aggregate of two years in his home country, or until he has obtained a waiver of the requirement.  Additionally, under 8 U.S.C. § 1258 (a), an individual

---

[1]  State Department and DHS regulations also make J-2 derivative spouses and children independently subject to the two-year foreign residence requirement.  *See* 22 C.F.R. § 41.62(c)(4) and 8 C.F.R. § 212.7(c)(4).

subject to the two-year foreign residence requirement is not permitted to file a change of status application from J-1 to any other nonimmigrant visa status while in the United States.

18.     The foreign residence requirement does not prohibit a Canadian national who is subject to 8 U.S.C. § 1182(e) from being admitted on an approved H-1B petition because Canadian nationals are visa exempt by regulation.  *See* 8 C.F.R § 212.1(a) and 22 C.F.R. § 41.2. Similarly situated Canadian national physicians have routinely been admitted on approved H-1B petitions, even though said physicians remained subject to the two-year foreign residence requirement.  Some such physicians have commuted back and forth from Canada to the United States on a daily basis, where the physician was working in the United States and fulfilling the two-year foreign residence requirement in the evening by returning to Canada.[2]

19.     As described with more specificity below, Dr. Atanackovic became subject to the foreign residence requirement because he came to the United States in J-1 status to participate in graduate medical education.

### IV.  LAW GOVERNING ADMISSION OF CANADIAN NATIONALS IN H-1B STATUS WHO ARE SUBJECT TO 8 U.S.C. § 1182(e).

20.     One subject to the two-year foreign residence requirement is ineligible ". . . to apply for an immigrant visa, or for permanent residence, or for a nonimmigrant visa under section 101(a)(15)(H) or section 101(a)(15)(L) until it is established that such person has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years following departure from the United States. . . ." 8 U.S.C. § 1182(e).

---

[2] Their regular commuting serves the purpose of simultaneously allowing them to work in the United States in H-1B status while also discharging the two-year foreign residence requirement, thus allowing them to apply for permanent residency.

21.     An individual subject to the two-year foreign residence requirement is ineligible to apply for a change of status from J-1 to any other nonimmigrant visa from within the United States.  8 U.S.C. § 1258(a).

22.     Canadian citizens are visa exempt.  *See* 8 C.F.R. § 212.1(a)(1) and 22 C.F.R. § 41.2(a).  All that is required for a Canadian citizen to be admitted in H-1B or H-4 derivative status is a valid, unexpired passport and the H-1B petition approval notice.

23.     Homeland Security and State Department regulations provide that a Canadian citizen may be admitted to the United States provided he or she has a passport valid for six months beyond the admission date and an approved I-129 petition approval notice.  *See* 8 C.F.R. § 214.1(a)(3) which provides that applicants for admission to the United States must present "a valid passport and valid visa unless either or both documents have been waived. . . . The passport of an alien applying for admission must be valid for a minimum of six months from the expiration date of the contemplated period of stay, unless otherwise provided in this chapter. . . ." *See also* 22 C.F.R. § 41.2(a) which provides that "A visa is not required for other Canadian citizens except for those who apply for admission in E, K, V, or S nonimmigrant classifications as provided in paragraphs (k) and (m) of this section and 8 CFR § 212.1.  A passport is required for Canadian citizens applying for admission to the United  States. . . ." with certain exceptions.

## V.  FACTUAL ALLEGATIONS

24.     Dr. Atanackovic first entered the United States on his J-1 visa on June 5, 2013, as a nonimmigrant exchange visitor under 8 U.S.C. § 1101(a)(15)(J) to participate in graduate medical education.

- 6 -

25.     Dr. Atanackovic's J-1 status was sponsored by the Educational Commission for Foreign Medical Graduates ("ECFMG").  As such, Dr. Atanackovic was subject to the two-year foreign residence requirement on the basis of his participation in graduate medical education.

26.     In February 2016, Dr. Atanackovic interviewed for a position at Rochester General, which had several positions available, including a position at Unity Family Medicine Center.  He proceeded to sign a four-year contract and the H-1B petition process was initiated.

27.     Unity Hospital submitted a CAP Exempt H-1B petition to employ Dr. Atanackovic on August 8, 2016.  The petition was approved by U.S. Citizenship and Immigration Services (USCIS) on August 23, 2016.  The approved petition was valid from September 12, 2016 to September 11, 2019, with notice to the Peace Bridge in Buffalo, New York, as the designated port of entry.

28.     The lawyer for the petitioner and beneficiary suggested that Dr. Atanackovic arrive at the Peace Bridge port of entry on Monday-Friday, between 9 a.m. and 4 p.m.  He was informed that this is when the most experienced officers would be working.

29.     Dr. Atanackovic's lawyer provided him with a letter explaining his eligibility for admission, which was to be provided to the inspecting officer at the port of entry.  That letter stated:

> . . . Unity and Dr. Atanackovic have entered into a contract of employment under which he will work as a family medicine physician for Unity.  He is a citizen of Canada, and by virtue of having completed his clinical physician training in J-1 status, is subject to the INA section 212(e) home residency requirement. The H-1B petition does not request a change of status or extension of status for Dr. Atanackovic.  Petitioner requested approval of its H-1B petition for the Beneficiary, with notice to the Peace Bridge as the designated port of entry.  The Beneficiary is aware that he

- 7 -

will remain subject to the 212(e) home residency requirement, even
after admission to the U.S. in H-1B status. . . .

30.     Dr. Atanackovic was instructed by his lawyer to present the petition approval

notice, the above-referenced letter, and his passport to the officer at the port of entry.

31.     Dr. Atanackovic proceeded as instructed on September 2, 2016.  Dr. Atanackovic

was admitted at the Peace Bridge without any issue.  He met all of the legal requirements for

admission set forth above in IV ¶¶ 19-22.  He was issued an I-94 with an expiration date of

October 2017, which was shorter than the validity period of September 11, 2019.  This was done

because his passport was due to expire in October 2017.  The officer at the port of entry indicated

that he should renew his passport in April 2017 and a new I-94 would be issued through

September 11, 2019.

32.     Between September 2, 2016 and January 6, 2017, Dr. Atanackovic was admitted

to the United States at various ports of entry 13 times.  During each such admission, he met all of

the legal requirements set forth in IV ¶¶ 19-22.  Dr. Atanackovic never ran into any problems

during these 13 admissions.

33.     Dr. Atanackovic departed the United States in early January 2017 to renew his

passport.  He attempted re-admission on January 11, 2017 at the Peace Bridge, following the

exact same procedure as the admission on September 2, 2016.  Dr. Atanackovic met all of the

legal requirements set forth in IV ¶¶ 19-22 and was admissible to the United States in H status.

34.     The officer at the port of entry asked Dr. Atanackovic for his J-1 waiver.  Dr.

Atanackovic responded that he did not have one, nor was a waiver required for his admission.

Dr. Atanackovic then provided the officer with the letter provided by his attorney, which

- 8 -

explained the law governing his admission.  The officer read the letter and then asked Dr.

Atanackovic to wait while he discussed this with his supervisor.

35.     The officer proceeded to have a discussion with the supervisor for about 10-15

minutes.  The discussion took place approximately 30 feet from Dr. Atanackovic.  Towards the

end of the conversation, Dr. Atanackovic heard the supervisor say: "It's up to you buddy."  The

officer proceeded to return to where Dr. Atanackovic was standing and told him that he would

not be allowed back into the United States.  The officer told him that his fellow officer made a

mistake in admitting him in H-1B status on September 2, 2016.  The officer concluded by telling

him that he could come back once he had the J-1 waiver.

36.     The denial of admission of Dr. Atanackovic was legally improper based on the

law set forth in IV ¶¶ 19-22.  It is legal error to deny admission to Dr. Atanackovic for want of a

J waiver.

37.     Dr. Atanackovic politely told the officer that he had patients scheduled in the

United States for days on end and that the denial of his admission would mean a denial of

medical care for these individuals.  He also mentioned that his permanent resident wife and U.S.

citizen son are in the United States and that he is the sole breadwinner for the family.  The officer

was unfazed and told Dr. Atanackovic that he was young and would be fine.

38.     Dr. Atanackovic mentioned to the officer that he knows of many other Canadians

throughout the United States working in H-1B status without a waiver.  The officer responded by

stating:

> If everyone goes through a red light, are you going to go through a
> red light?  This is what happened; they were all let in incorrectly,
> you all went through the red light, but you got caught.

- 9 -

39.     Dr. Atanackovic asked if he could call his lawyers and the officer permitted him to do so.  He called his lawyers, who attempted to intervene by contacting a supervisor.

40.     One of Dr. Atanackovic's lawyers emailed the Chief Watch Commander, Peter Scoma, at the Peace Bridge.  The lawyer summarized Dr. Atanackovic's eligibility for admission. Chief Scoma responded by stating:

> This case is very familiar [sic] to the case you had a few weeks ago that you discussed with WC Bennett.  Our legal opinion has not changed.  Your client is subject to the two-year residence requirement.

41.     Dr. Atanackovic was then taken to a back office where his photo and fingerprints were taken.  His I-94 was also confiscated.  During this process, Dr. Atanackovic asked the officer if he could continue on to Rochester as a Canadian visitor.  The officer went to the supervisor who yelled out from approximately 30 feet away: "No, get out of here!"

42.     The officer then sent Dr. Atanackovic back towards Canada.  Once he arrived at the Canadian border, he was forced to complete paperwork indicating that he was returning as a Canadian resident.  He also had to import his New York State-licensed car into Canada because he no longer held U.S. status.

43.     Dr. Atanackovic's lawyer later followed up with Chief Scoma to request that Dr. Atanackovic be paroled back into the United States on humanitarian grounds for one week commencing February 5, 2017.  The purpose of this was for attending his 18-month-old U.S. citizen son's surgery and to collect his belongings.  The request was granted.  Chief Scoma cited the fact that Dr. Atanackovic has a wife who is a legal permanent resident and a son who is a U.S. citizen as factors influencing his decision to grant the parole request.

44.     On information and belief, CBP changed its internal polices and standards in the adjudication of applications for admission of Canadian national physicians subject to the two-year foreign residence requirement who have a valid passport and an approved H-1B petition. But the relevant statutes have not changed.  The regulations have not changed.  And there has been no public announcement of any such change.

45.     In the instant case, CBP did not provide a reasoned analysis indicating that prior policies and standards of adjudication are being deliberately changed, as it is required to do under general principles of administrative agency law.  *See*, *e.g.*, *N.Y. Pub. Interest Research Group, Inc. v. Johnson*, 427 F.3d 172, 182 (2d Cir. 2005).

46.     There is no administrative appeal for the denial of admission of Dr. Atanackovic on January 11, 2017.

47.     The Plaintiffs have exhausted their administrative remedies.

48.     The January 11, 2017 denial of admission of Dr. Atanackovic is irrational and contrary to the statutory standards of the APA and the Immigration and Nationality Act, the Department of Homeland Security and State Department regulations, and the intent of Congress in enacting the J-1 two-year foreign residence requirement — in that it fails to consider all of the facts relevant to the decision to not admit Dr. Atanackovic, discuss any change in policy relevant to the decision to not admit Dr. Atanackovic, or demonstrate that it properly considered Dr. Atanackovic's application for admission to the United States.

49.     Dr. Atanackovic's application for admission was meritorious and should have been approved.

50.     Dr. Atanackovic filed a Department of Health and Human Services (HHS) clinical Interested Government Agency (IGA) waiver request sometime prior to July 3, 2017.  This was approved by the USCIS on July 27, 2017.  A new employer, Rochester General Hospital, filed a new H-1B petition for Dr. Atanackovic on July 14, 2017.  The new employer was required to meet the requirements for HHS to grant the waiver.  The new H-1B petition was approved on August 1, 2017.  Dr. Atanackovic was admitted to the United States on the new H-1B petition at the Peace Bridge port of entry on August 9, 2017.

51.     The denial of admission on the initial H-1B petition caused Dr. Atanackovic to switch employers from Unity to Rochester General Hospital.  CBP's unlawful actions caused Dr. Atanackovic to abandon over 227 patients and take a job with a different employer in a completely different practice environment.  Unity was forced to make arrangements to cover these 227 patients that Dr. Atanackovic can no longer see.  Dr. Atanackovic is now required to work in an underserved urban area for a period of three years at two federally qualified health centers identified in his HHS waiver and related to the H-1B petition.  This change was made solely to facilitate Dr. Atanackovic's re-entry into the United States.  Dr. Atanackovic remains deprived of the original job at Unity because of CBP's unlawful actions.  He is not permitted to work at the original employer, Unity, because he was not admitted on that H-1B approval.

## VI.  IRREPARABLE INJURY

52.     Absent the admission of Dr. Atanackovic on the original H-1B petition, Plaintiffs will suffer irreparable injury.

53.     Dr. Atanackovic was unable to work as a physician in the United States for almost seven months because of the denial of his admission.

54. Dr. Atanackovic's absence from the United States has harmed his employer, Unity Hospital, because he was unavailable to see patients. This has resulted in the delay or denial of medical care to Dr. Atanackovic's patients.

55. The resultant disruption of Dr. Atanackovic's career may permanently and irreparably damage his career.

56. The denial of admission to visa-exempt Canadian nationals subject to the two-year foreign residence requirement will harm Unity Hospital and Rochester General because both Plaintiffs count on the presence of visa-exempt Canadian nationals in their delivery of healthcare to their region. Disallowing visa-exempt Canadian physicians from entering the United States will cause a loss in revenue and the inability to properly staff their facilities. This will in turn result in the delay and/or denial of medical care to thousands of patients in these regions.

57. The disruption of Unity Hospital and Rochester General's ability to recruit and employ Canadian physicians may permanently and irreparably damage the corporations' ability to generate revenue and deliver medical care to the population of the United States.

## COUNT ONE: ABUSE OF DISCRETION
## AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

58. Paragraphs 1 through 57 above are repeated and realleged as though fully set forth herein.

59. The Defendants' denial of Dr. Atanackovic's admission to the United States is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress, and it is therefore arbitrary and capricious, because the Defendants failed to admit Dr.

Atanackovic when he applied for admission in conformity with the statute and the regulations and failed to state a valid reason for their denial of his admission to the United States.

60.     The Defendants' adjudication of Dr. Atanackovic's application for admission is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress because the Defendants failed to admit him to the United States even though he met all legal requirements for admission and the Defendants failed to provide a valid explanation for their decision to deny his admission to the United States.

61.     The Defendants acted outside the scope of discretion granted by Congress.

62.     The Defendants' denial of Dr. Atanackovic's application for admission therefore violates the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 702, and 706(1), and otherwise constitutes abuse of discretion.

### COUNT TWO:  FAILURE TO PROVIDE REASONED ANALYSIS DESCRIBING A MARKED CHANGE IN POLICY OF PERMITTING VISA-EXEMPT CANADIANS FROM ENTERING THE UNITED STATES WHEN SUCH NATIONALS ARE SUBJECT TO THE TWO-YEAR FOREIGN RESIDENCE REQUIREMENT

63.     Paragraphs 1 through 62 above are repeated and realleged as though fully set forth herein.

64.     Courts have held that an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed.  *See N.Y. Pub. Interest Research Group, Inc. v. Johnson*, 427 F.3d 172, 182 (2d Cir. 2005).

65.     The statute and regulations permit physicians like Dr. Atanackovic to enter the United States without an H-1B visa.  Similarly situated Canadian nationals have been admitted to the United States for decades prior to Dr. Atanackovic's denial.

- 14 -

66.     The Defendants' denial of Dr. Atanackovic's admission without explaining the change in policy and standards violates federal decisional law that mandates such explanations.

### COUNT THREE:  DECLARATORY JUDGMENT

67.     Paragraphs 1 through 66 above are repeated and realleged as though fully set forth herein.

68.     This Court has authority to issue a declaratory judgment regarding the rights, privileges, and duties of the parties under 28 U.S.C. § 2201.

69.     This Court should declare that Canadian national physicians and their derivative family members who are subject to the two-year foreign residence requirement of 8 U.S.C. § 1182(e) who are in possession of an approved H-1B petition and H-4 spouses and children who have H-4 approvals from USCIS and/or who are eligible to apply for H-4 status to CBP based on their relationship to the H-1B beneficiary, with an unexpired passport valid for six months beyond the admission date are admissible to the United States in H-1B and/or H-4 derivative status.

70.     This Court should declare that Dr. Atanackovic was eligible to be admitted in H-1B status to the United States.

71.     This Court should declare that the Defendants' position that 8 U.S.C. § 1182(e) prevents all of those subject to it, including citizens of Canada, from obtaining H-1B or H-4 status in any manner is contrary to the statutory standards, regulations, legislative history, congressional intent, and due process of law.

72.     This Court should declare that CBP has a duty to explain its change in policy and standards with respect to the adjudication of Dr. Atanackovic's application for admission.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

A.      Declare the Defendants' adjudication of Dr. Atanackovic's application for admission on January 11, 2017 to be in violation of the statute, regulations, legislative intent, and agency procedures;

B.      Declare that the Dr. Atanackovic is statutorily eligible to apply for admission to the United States in H-1B status on his first H-1B petition approval notice;

C.      Declare that the Defendants' denial of Dr. Atanackovic's admission in H-1B status was unlawful, arbitrary, and capricious, contrary to the statute, regulations, legislative history, and congressional intent;

D.      Declare that physicians subject to 8 U.S.C. § 1182(e) who have approved H-1B petitions and valid Canadian passports are eligible to be admitted to the United States in H-1B status;

E.      Order the Defendants to immediately admit Dr. Atanackovic to the United States in H-1B status on his first H-1B petition;

F.      Declare that H-4 spouses and children subject to 8 U.S.C. § 1182(e) who have H-4 approvals from USCIS and/or who are eligible to apply for H-4 status to CBP based on their relationship to the H-1B beneficiary and valid Canadian passports are eligible to be admitted to the United States in H-4 status;

G.      Grant an award of attorneys' fees and costs; and

H.      Grant such other relief as the Court may deem just and proper.

Dated: October 3, 2017

                                        */s/ Brian C. Schmitt*
                                        BRIAN C. SCHMITT
                                        Hake & Schmitt
                                        P.O. Box 540 (419 Main St.)
                                        New Windsor, Maryland  21776
                                        (410) 635-3337
                                        brian@hake.com

                                        *Counsel for Plaintiffs*

- 17 -